UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DJAMEL AMROUNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:23-cv-03445 (ABJ) |
| EMBASSY OF THE REPUBLIC OF IRAQ, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT
BY DEFENDANT THE EMBASSY OF THE REPUBLIC OF IRAQ.**

Defendant the Embassy of the Republic of Iraq ("Defendant" or the "Embassy") by counsel, hereby moves to dismiss the Complaint (Dkt. 1) of Plaintiff Djamel Amroune ("Mr. Amroune") in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal rule of Civil Proceure 12(b)(6). A memorandum in support of this motion is filed herewith.

Pursaunt to Local Civil Rule 7(f), the Embassy respectfully requests that an oral hearing be held on its Motion to Dismiss.

Dated:     September 4, 2024          Respectfully,

_____/s/___Joshua Erlich_____
Joshua Erlich, DC Bar No. 1011008
Katherine L. Herrmann, DC Bar No. 1034189
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd. Suite 700
Arlington, Virginia 22209
Tel:    (703) 791-9087
Fax:    (703) 722-8114
Email: jerlich@erlichlawoffice.com
            kherrmann@erlichlawoffice.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2024, the foregoing was filed electronically using the Court's CM/ECF System, which sent a true and accurate copy to:

Gregg C. Greenberg, DC Fed. Bar No. MD1729
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: (301) 587-9373
Email: ggreenberg@zagfirm.com

*Counsel for Plaintiff*

_____/s/___*Joshua Erlich*_____
Joshua Erlich, DC Bar No. 1011008
The Erlich Law Office, PLLC
1550 Wilson Blvd. Suite 700
Arlington, VA  22209
Tel:    (703) 791-9087
Fax:    (703) 722-8114
Email: jerlich@erlichlawoffice.com

*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DJAMEL AMROUNE, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>EMBASSY OF THE REPUBLIC OF IRAQ, )<br>)<br>    Defendant. )<br>) | Case No. 1:23-cv-03445 (ABJ) |

**DEFENDANT EMBASSY OF THE REPUBLIC OF IRAQ'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant the Embassy of the Republic of Iraq ("Defendant" or the "Embassy") by counsel, hereby moves to dismiss the Complaint (Dkt. 1) of Plaintiff Djamel Amroune ("Mr. Amroune") in its entirety with prejudice. The Embassy is a "foreign state" that is immune from liability under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(1). Although the FSIA contains several exceptions that may expose a foreign state to liability in United States court, none of those exceptions apply here.

This Court lacks subject matter jurisdiction over the instant action and Plaintiff's Complaint should be dismissed in its entirety with prejudice.[1]

**FACTUAL BACKGROUND**

The Embassy of Iraq in Washington, D.C. is the diplomatic mission of the Republic of Iraq to the United States, and a "diplomatic mission" pursuant to the Vienna Convention on

---

[1] In the event the Court does not dismiss Plaintiff's Complaint, the Embassy will move to strike Plaintiff's demand for liquidated damages arising under the D.C. Wage Protect Act. These damages are punitive in nature, and the Embassy may not be held liable for punitive damages under 28 U.S.C. § 1606.

Diplomatic Relations, April 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S 95 ("Vienna Convention"). The Embassy is recognized and listed as such by the U.S. Department of State on its "Historical Diplomatic List." *See* Exhibit A (State Department Historical Diplomatic List at 62);[2] Compl. ¶ 3.

    To be classified as a "diplomatic mission" under the Vienna Convention, the mission's functions must entail certain non-commercial activities, including (1) representing the sending State in the receiving State; (2) protecting in the receiving State the interests of the sending State and its nationals, within the limits permitted by international law; and (3) promoting friendly relations between the sending State and the receiving State, and developing their economic, cultural, and scientific relations. Vienna Convention on Diplomatic Relations, April 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95, at Article 3.

    At the time of the events alleged in his Complaint, Mr. Amroune served as a "private chef" to Iraq's then-Ambassador to the United States, Dr. Fareed Yasseen. Compl. ¶¶ 7, 10; *see also* Exhibit B, December 31, 2019 "Local Employees Contract," attached hereto as Exhibit A.[3]

---

[2] If the Court deems this fact to be outside of its Rule 12(b)(1) analysis, it may take judicial notice of the State Department Historical Diplomatic List pursuant to the Federal Rules of Evidence, as the information it contains "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Federal Rule of Evidence 201(b).

[3] Although Plaintiff did not attach this document to his Complaint, it is properly considered on this motion. If "the defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may consider the evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370, F.3d 392, 398 (4th Cir. 2004).

In addition, "[w]here to motion to dismiss is based on a claim of foreign sovereign immunity, which provides protection from suit and not merely a defense to liability . . . the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of its authority to hear the case before trial. *Id.* (quoting *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997).

## **STANDARD OF REVIEW**

*Rule 12(b)(1): Subject Matter Jurisdiction*

A motion filed pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction over the pending action. "Under Federal Rule of Civil Procedure 12(b)(1), plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence." *Schermerhorn v. Israel*, 235 F. Supp. 3d 249, 255 (D.D.C. 2017). In accordance with the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993).

Where, as here, a Rule 12(b)(1) motion challenge is raised to both the factual and legal bases for subject matter jurisdiction, the district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016). If "the motion to dismiss is based on a claim of foreign sovereign immunity, which provides protection from suit and not merely a defense to liability, . . . the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of its authority to hear the case before trial." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997)).

*Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

Although the Court may "assume the truth of all well-pleaded factual allegations," it "need not, however 'accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint" nor must it "accept legal conclusions couched as factual allegations." *Nurridin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## ARGUMENT

### I. The Embassy Is Entitled to Sovereign Immunity with Respect to Both Counts of Plaintiff's Complaint.

The FSIA expressly provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" subject to enumerated exceptions. 28 U.S.C. § 1604; *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("Under the [FSIA], a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."). Consequently, "the FSIA must be applied by the district courts in every action against a foreign sovereign, since subject-matter jurisdiction in any action depends on the existence of one of the specified exceptions to foreign sovereign immunity." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433-34 (1989).

Plaintiff admits that the Embassy is "an agency or instrumentality" of the Republic of Iraq., Compl. ¶¶ 3, 5-6, but invokes the Court's jurisdiction under 28 U.S.C. § 1330, which provides that the district court shall have jurisdiction "against a foreign state" in suits in which the foreign state is not entitled to immunity, and by asserting that the Embassy's actions fall into one of the FSIA's exceptions.

Mr. Amroune alleges that the Embassy is not entitled to sovereign immunity based on two FSIA exceptions: (1) that it consented to jurisdiction under the terms of a contract between himself and the Embassy; and (2) that this matter falls within the commercial activity exception to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"). Compl. ¶ 6 (citing 28 U.S.C. § 1605(a)(2)).

Contrary to Plaintiff's assertions, the Embassy has not waived sovereign immunity based on any contractual agreement and the instant matter does not fall within the commercial activity exception to sovereign immunity provided under the Act. 28 U.S.C. 1605(a)(2).

### A. The Embassy Did Not Waive Sovereign Immunity Pursuant to Any Agreement with Mr. Amroune.

Plaintiff alleges — in general, conclusory terms — that the Embassy waived its entitlement to sovereign immunity based on the language of a written agreement between himself and the Embassy. Compl. ¶¶ 6, 13, 15. Neither the facts pled by Plaintiff nor the written agreement referenced in his Complaint support the applicability of the implied waiver exception to the FSIA in the instant matter.

The FSIA's implied waiver exception provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication[.]" 28 U.S.C. § 1605(a)(1). The D.C Circuit has found implicit waiver "in only three circumstances: (i) the state's executing a contract containing a choice-of-law clause designating the laws of the United States as applicable; (ii) the state's filing a responsive pleading without asserting sovereign immunity; or (iii) the state's agreeing to submit a dispute to arbitration in the United States." *Khochinsky v. Republic of Poland*, 1 F.4th 1, 8-9 (D.C. Cir. 2021) (finding implicit waiver

requires "strong evidence" "that the foreign state . . . *intended* to waive its sovereign immunity"). *Id.* (citations omitted, emphasis in original).

Here, Plaintiff alleges the Embassy implicitly waived its sovereign immunity because (1) "Plaintiff worked under the terms and conditions of employment contracts drafted by the Iraqi Embassy or Ministry of Foreign Affairs" and (2) "Plaintiff's work was governed by the obligations set forth in the Contract, and not by Iraqi civil service law." Compl. ¶¶ 13, 15. These are the only facts alleged by Mr. Amroune in support of its implied waiver argument, and these facts fall substantially short of the strong evidence of intent to waive sovereign immunity that is required for the exception to apply.

The agreement referenced in Mr. Amroune's Complaint does not evidence any intent by the Embassy for Plaintiff's employment contract to be governed by the laws of the United States. There is no express choice-of-law provision in this document, Ex. B, as is generally the case when Courts find implied waiver. *See, e.g.*, *Ansary v. Central Bank of Curacao and Sint Maarteen*, 2024 WL 2768556 (D.D.C. May 30, 2024) (citing *Khochinsky*, 1 F.4th at 8). Nor does the document make any reference to United States law. Ex. B. There is *nothing* within the written agreement on which Mr. Amroune relies to support the Embassy having intended the laws of the United States to govern.

The Embassy did not waive sovereign immunity by the terms of the agreement referenced in Mr. Amroune's Complaint, and the implied waiver exception does not apply to the instant action.

### B. The Commercial Activity Exception to the FSIA Does Not Apply to This Action.

Mr. Amroune's reliance on the commercial activity exception to sovereign immunity under the FSIA is equally unavailing. Under the commercial activity exception, "[a] foreign state

6

shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state[.]" 28 U.S.C. § 1605(a)(2). The FSIA specifies that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* § 1603(d). For this exception to apply, a foreign state must be engaged in commercial activity upon which the suit is based. *Id.* Claims arising from a foreign state's engagement in regulatory or governmental activity do not support the commercial activity exception to sovereign immunity. *Id.*

        1. *The Conduct of the Embassy at Issue Is Not Commercial Activity.*

The analysis begins "by identifying the particular conduct on which the [suit's] action is 'based' for purposes of the Act." *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993). Whether an action is "based" on commercial activity depends on the "elements of a claim, [that] if proven, would entitle a plaintiff to relief under his theory of the case." *Id.* at 357. It requires "something more" than a mere connection with, or relation to, commercial activity;" *id.* at 358, and the commercial activity must establish more than "a single element of the claim." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 34 (2015).

Here, the conduct that constitutes the gravamen of Plaintiff's claim is the Embassy's alleged failure to pay all of the "end of service" benefits owed to Mr. Amroune following his resignation from employment with the Embassy. Both Mr. Amroune's claim arising under the DCWPA and his claim for breach of contract hinge on one provision of an agreement between the Embassy and Mr. Amroune, and this dispute did not arise until after Mr. Amroune voluntarily resigned from his employment. Compl. ¶¶ 23, 26.

      *2. The Embassy's Employment of a Private Chef for Its Ambassador Is Not the Type of Action By Which a Private Party Engages in Trade and Traffic or Commerce.*

Once the "gravamen of the Plaintiff's action" has been established, it must next be determined whether it constitutes "commercial activity." *Rosenkrantz v. Inter-American Dev. Bank*, 35 F.4th 854, 864 (D.C. Cir. 2022). A foreign state engages in commercial activity "only where it acts 'in the manner of a private player within' the market." *Nelson*, 507 U.S. at 359-60 (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)).

"[T]he question is not whether the foreign government is acting with a profit motive," but whether the particular actions that the foreign state performs (whatever the motives behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Weltover, Inc.*, 504 U.S. at 614. "[A] state engages in commercial activity . . . where it exercises only those powers that can also be exercised by private citizens." *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993).

The Embassy's core function of promotion the diplomatic interests of the Republic of Iraq is not that of a private player within the marketplace, the FSIA's commercial activity exception does not apply, and this Court lacks subject matter jurisdiction over Plaintiff's claims. As noted *supra*, the Embassy of Iraq in Washington, D.C. is the diplomatic mission of the Republic of Iraq to the United States, and a "diplomatic mission" pursuant to the Vienna Convention on Diplomatic Relations, April 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S 95 ("Vienna Convention), and is recognized and listed as such by the U.S. Department of State on its "Historical Diplomatic List." Ex. A.[4]

---

[4] To be classified as a "diplomatic mission" under the Vienna Convention, the mission's functions must entail certain non-commercial activities, including (1) representing the sending State in the receiving State; (2) protecting in the receiving State the interests of the sending State and its nationals, within the limits permitted by international law; and (3) promoting friendly

Mr. Amroune alleges that he did not serve as a civil servant or perform diplomatic duties while employed by the Embassy. Compl. ¶¶ 8-9, 12. However, even where the work performed by a plaintiff is not that of a civil servant, the Court must still determine whether the work the plaintiff performed was itself governmental in nature, *i.e.,* "whether his work involve[d] the exercise of 'powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns.'" *El-Hadad II*, 496 F.3d at 664; *see also Nelson*, 507 U.S. at 360 (explaining that "[a] foreign government's employee might not be a civil servant (or diplomat or soldier) and still be engaged in quintessentially governmental work).

Courts have been suspect of using the commercial activities exception to exempt individuals seeing to the everyday needs of diplomatic staff. In *Crum v. Kingdom of Saudi Arabia*, for example, "an embassy's decision to hire a limousine driver to transport embassy officials, their families and guests, and meet its everyday needs does not" fall within the commercial activity exception to the FSIA. 2005 WL 3752271, at *4 (E.D. Va., July 13, 2005). Similarly, in *Butters v. Vance Int'l, Inc.*, the Court ruled that the FSIA barred plaintiff's claims against a private third party providing security services to Saudi Arabian officials. 225 F.3d 462, 466-67 (4th Cir. 2000). Here, as in *Crum*, the Embassy's decision to hire Mr. Amroune as a private chef for its Ambassador, for the purpose of meeting the Ambassador's everyday needs, does not fall within the commercial activity exception to the FSIA.

The agreements under which Mr. Amroune performed his work for the Embassy evidence the governmental nature of his position and the manner by which powers peculiar to sovereigns governed his responsibilities. An agreement between Mr. Amrounce and the Head of

---

relations between the sending State and the receiving State, and developing their economic, cultural, and scientific relations. Vienna Convention on Diplomatic Relations, April 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95, at Article 3.

9

Mission, Dr. Fareed Yassan, dated January 5, 2018 demonstrate the unique governmental duties attendant to Mr. Amroune's work with the Embassy.

Notably, this agreement refers to Mr. Amroune's position within the Embassy as an "appointment" requiring an administrative order rather than "employment." *See* Jan. 5, 2018 agreement, attached hereto as Exhibit C, at 1 ("After the approval of the Ministry's Headquarters to appoint the local employee in the mission, the contract period shall be for one year . . . as from the date of issuing the administrative order by the mission under No. 491 . . . and the commencement of work by the second party in the mission.").

Mr. Amroune's obligations under the agreement include the following:

- o Acceptance of assignment "to any work beyond the official working hours, specially upon the arrival of Iraqi delegations and he shall not request any additional amounts." Ex. C at 1.

- o Not to "disclose any information related to the mission that he may hear of during his work, whether to a person, board or organization. . ." Ex. C at 1.

- o Not to "make any statement or announcement regarding his work, whether through newspapers, television, or others, unless permitted by the first party in writing." Ex. C at 2.

- o Commitment "not to take any official documents or papers to his house or any other public place, even if they [are] related to the work to which he is assigned, and he shall keep those documents and papers at the Mission's Headquarters . . ." Ex. C at 2.

- o Not to "sleep at the Mission's Headquarters," without first obtaining the "approval of the Ministry." Ex. C at 2.

*See* Exhibit C at 1-2.

These provisions, among others, demonstrate the governmental nature of Mr. Amroune's position with the Embassy and demonstrate his responsibilities were not limited to labor or administrative tasks.

## II. Sovereign Immunity Bars Plaintiff's D.C. Wage Payment Act Claim.

The D.C. Wage Payment Act requires that all employers pay their employees at least twice monthly on designated paydays, pay all earned and promised wages and pay wages timely upon the termination of employment. D.C. Code § 32-1301, *et seq*. The Act defines the term "employer" as:

> Every individual, partnership, firm, general contractor, subcontractor, association, corporation . . . employing any person in the District of Columbia provided that the word "employer" shall not include the government of the United State, the government of the District of Columbia, or any agency of either of said governments. . .

D.C. Code § 32-1301. Notably absent from this list are foreign sovereigns, such as the Embassy. Similar employment-related statutes in the District of Columbia have omitted the federal government from its definition of employer. *See, e.g, Macrus v. Geithner*, 813 F. Supp. 2d 11, 17 (D.D.C. 2011) (regarding the DC Human Rights Act); and *Jordan v. Evans*, 404 F. Supp. 2d 28, 31 (D.D.C. 2005).

Similar reasoning has been applied to foreign governments due to "the longstanding interpretive presumption that 'person' does not include the sovereign," including what the sovereign is a "foreign state." *Doe v. Fed. Democratic Rep. of Ethiopia*, 189 F. Supp. 3d 6, 12 (D.D.C. 2016) (holding that the Wiretap Act's definition of "person" did not include a foreign state).

The Embassy is not an employer under the definition provided in the DC Wage Payment Act, and — as a foreign state — it remains entitled to sovereign immunity.

## CONCLUSION

11

The Embassy is entitled to sovereign immunity under the FSIA, and Plaintiff cannot invoke § 28 U.S.C. 1330 to establish this Court's subject matter jurisdiction in the instant matter. This Court should dismiss the entirety of Mr. Amroune's Complaint against the Embassy with prejudice.

Dated:	September 4, 2024	Respectfully,

_____/s/___*Joshua Erlich*_____
Joshua Erlich, DC Bar No. 1011008
Katherine L. Herrmann, DC Bar No. 1034189
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd. Suite 700
Arlington, Virginia 22209
Tel:	(703) 791-9087
Fax:	(703) 722-8114
Email: jerlich@erlichlawoffice.com
       kherrmann@erlichlawoffice.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 4, 2024, the foregoing was filed electronically using the Court's CM/ECF System, which sent a true and accurate copy to:

Gregg C. Greenberg, DC Fed. Bar No. MD1729
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: (301) 587-9373
Email: ggreenberg@zagfirm.com

*Counsel for Plaintiff*


                                                                              /s/   *Joshua Erlich*
                                                Joshua Erlich, DC Bar No. 1011008
                                                The Erlich Law Office, PLLC
                                                1550 Wilson Blvd. Suite 700
                                                Arlington, VA  22209
                                                Tel:     (703) 791-9087
                                                Fax:    (703) 722-8114
                                                Email: jerlich@erlichlawoffice.com

                                                *Counsel for Defendant*